IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CASE NOS. 1:CR-07-153-01** |
| : | **1:CR-07-153-02** |
| : | **1:CR-07-153-03** |
| v. : | |
| : | |
| : | |
| **CARLTON L. EASTER** : | |
| **JAMEL E. EASTER** : | |
| **JOSEPH JAMENE MOORE** : | |

# M E M O R A N D U M

**I.      Background**

On November 7, 2007, a grand jury handed up a second superseding indictment against the Defendants captioned above. Count I of the indictment charged Carlton L. Easter with possession with intent to distribute 50 grams or more of cocaine base from February 2007 to March 29, 2007, in violation of 21 U.S.C. § 841(a). Count II of the indictment charged Carlton L. Easter, Jamel E. Easter and Joseph Jamene Moore with possession with intent to distribute and distribution of 50 grams or more of cocaine base on March 29, 2007, in violation of 21 U.S.C. § 841(a). Count III charged Carlton L. Easter, Jamel E. Easter and Joseph Jamene Moore with possession or carrying a firearm in furtherance of a drug trafficking crime on March 29, 2007, in violation of 18 U.S.C. § 924(c). Count IV charged all three Defendants with conspiracy in the drug distribution charges in violation of 21 U.S.C. § 846. Count V charged Jamel E. Easter and Joseph Jamene Moore with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). In Count VI of the indictment, the Government sought forfeiture of the currency seized on March 29, 2007, in violation of 21 U.S.C.§§ 853 and 982.

From February 4 through February 8, 2008, a jury trial was held. Carlton Easter was acquitted on Count I. All Defendants were found guilty on Count II. Carlton Easter and Joseph Moore were acquitted on Count III. Jamel Easter was found guilty on Count III. All Defendants were found guilty on Count IV. Joseph Moore was acquitted on Count V as a result of a fact finding by the jury that he was not in possession of a firearm. Jamel Easter's conviction on Count V was subsequently dismissed when a presentence report revealed he did not have a conviction which prohibited him from possessing a firearm. Defendants all conceded their interest in the currency seized in the arrest.

All Defendants have filed motions for judgment of acquittal and new trial. All Defendants claim there was insufficient evidence to prove beyond a reasonable doubt that they possessed 50 grams or more of cocaine base or that there was sufficient proof of a conspiracy or that they belonged to a conspiracy. Jamel Easter further contends that his conviction for possession of a firearm in furtherance of drug trafficking be dismissed because the Government failed to present evidence to establish that the gun was actually a firearm as defined by the statute or that it was connected to drug trafficking. The motions have been fully briefed and are ripe for disposition.

## II.       **Facts**[1]

On March 29, 2007, an informant working with the Federal Bureau of Investigation ("FBI") notified the FBI that a person named "Mel," later identified as Jamel Easter, had approached him and wanted to purchase a kilo of cocaine from the informant. (Notes of Testimony ("N.T.") at p. 30.) After speaking with the FBI, the

---

[1] The facts are set forth in the Government's Brief in Opposition to the Motions (doc. 188) at pages 3-7 and are adopted here by the court.

informant contacted Jamel Easter and agreed to sell Jamel Easter crack cocaine. The FBI instructed the informant to attempt to set up a drug transaction where the informant would meet with Jamel Easter in a public location where surveillance could watch the transaction. Once Jamel Easter provided the informant with cash for the fictitious cocaine, surveillance officers would respond to arrest Jamel Easter.

The informant made a series of recorded telephone calls to Jamel Easter. During these calls, Jamel Easter indicated that he wanted 18 ounces of crack cocaine. As the calls progressed, Jamel Easter explained that he gotten crack cocaine. Jamel Easter indicated that he now only needed nine ounces of crack cocaine and that those nine ounces were for someone else. Jamel Easter agreed to meet the informant on a street corner in Harrisburg at approximately noon on March 29, 2007.

On the day of the transaction, the informant utilized a telephone provided by the FBI. Unfortunately, the telephone number would appear blocked whenever the informant called Jamel Easter. Jamel Easter failed to appear at the meeting location at the set time, so the informant called him. Jamel Easter expressed concern over his telephone number being blocked and attempted to delay the transaction. The informant waited on the street corner for almost three hours, having repeated telephone calls with Jamel Easter. At one point, Jamel Easter's girlfriend drove by the meeting location and observed the informant standing at the set location and waiting. Finally, at three o'clock, Jamel Easter drove to the meeting location.

However, unlike what was discussed, Jamel Easter had three other occupants in the car. As the informant testified in trial, this aroused his concerns of something occurring. Carlton Easter was the front seat passenger, Joseph Moore was a backseat passenger, and another unknown male was the other backseat

passenger.  The informant entered the backseat of the car and sat next to Joseph Moore.  The informant expressed his displeasure with waiting as long as he did and with the three other individuals being in the car.  Immediately, Carlton Easter identified people he suspected were parole officers potentially watching the area and notified everyone in the car.  In response, Jamel Easter drove the car from the location where he picked up the informant to another block where they could do the transaction out of view of law enforcement.

Once parked, the informant notified them that he did not have the crack cocaine with him.  The informant told them that the informant's partner had the drugs nearby and would bring them to the location once they paid the informant the money. Carlton Easter handed the informant the money.  The informant began to count the money while the other occupants looked on.  Jamel Easter attempted to renegotiate the price from $6,000 to $5,900, however, the informant refused.  The informant explained that his partner had driven the crack cocaine from Philadelphia to Harrisburg and that he needed $6,000 for the nine ounces.  The informant proceeded to count the money.  While he counted, officers responded to the location to attempt to arrest the defendants.  Carlton Easter identified the responding law enforcement and told Jamel Easter to drive away.

Jamel Easter proceeded to drive up onto the sidewalk and speed down the sidewalk over road signs in an attempt to get away from the law enforcement which was driving down the road.  As they sped away, the informant testified that he observed Joseph Moore withdraw a black gun and throw it forward towards the front seat of the car. As the car slowed while rounding a corner, the informant opened the door and rolled out of the moving car into the street. The six thousand dollars in cash were left blowing in the air as the assailants continued to speed down the street.

Jamel Easter drove the car another block or more before stopping. Carlton Easter had previously been shot in his leg and was unable to run. Carlton Easter sat in the front seat of the vehicle. Jamel Easter grabbed the gun which Moore had thrown to him and ran towards some abandoned houses. Joseph Moore and the unidentified individual also fled from the car. Joseph Moore followed Jamel Easter towards the abandoned houses. Officers followed them closely behind.

While Jamel Easter ran, he went down to the ground near the rear of an abandoned house. After momentarily being down, Jamel Easter immediately arose and proceeded into the abandoned home. Officers responding to the area observed – in the exact location where Jamel Easter had gone down – a bag containing crack cocaine weighing 83.7 grams, a digital scale, and a black, .40 caliber Glock pistol, serial number GVN235. Officers attempted to arrest Jamel Easter and Joseph Moore inside the abandoned home, however, the floor of the abandoned house was falling through. Ultimately, they were unable to safely enter the property and arrest the assailants.

Officers also searched the car which Joseph Moore and Jamel Easter abandoned. They found a bag on the floor of the back seat near where Joseph Moore and the unidentified individual were seated. Inside the bag, the officers found 4.7 grams of cocaine base and marijuana. The officers found a small amount of marijuana in Carlton Easter's pocket. Officers found a small amount of marijuana in Jamel Easter's pocket.

Jamel Easter gave a statement to the police in which he admitted that he had arranged with the informant to purchase nine ounces of crack cocaine for $6,000. Inaddition, he admitted that he drove to the location with the other individuals and had the 83.7 grams of crack cocaine and scale on his person during the transaction. He admitted that as he drove away from the area the black gun was

thrown from the backseat area up towards him.  When he fled from the police, Jamel Easter admitted that he hid the gun, crack cocaine, and scale near the abandoned house before entering it.

Carlton Easter gave a statement to the police where he admitted to trafficking in quantities of cocaine base for a period of years preceding his arrest.

### III.     Legal Standard

A motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 requires the court to "review the record in the light more favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence."  *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001).

A motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 may be granted "if the interest of justice so requires."  A court must exercise its authority to grant a new trial sparingly and only in the most extraordinary circumstances.  *United States v. Ramerez*, 313 F. Supp.2d 276 (S.D.N.Y. 2004).

### IV.     Discussion

      A.     **Conspiracy to Possess Cocaine Base and Possess with Intent to Deliver**

To establish the offense of conspiracy, the Government must prove the following elements beyond a reasonable doubt: (1) a unity of purpose among the co-conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work toward that common goal.  *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).

Negotiations for the purchase of crack cocaine began between the informant, Brian Rice, and Jamel Easter. Audio recordings were made of these negotiations. It was finally agreed that Rice and Jamel Easter would meet at about noon on March 29, 2007 at which time nine ounces of cocaine base would be sold to Jamel Easter.

Jamel Easter failed to appear at the agreed upon location at the set time.[2] At three o'clock, after repeated telephone calls by Rice, Jamel Easter arrived in a car at the meeting place but with three other unanticipated occupants, i.e., Carlton Easter, Joseph Moore and an unknown male. Rice got into the back seat of the car and sat next to Joseph Moore who was on his left. Carlton Easter was in the front passenger seat.

After Rice expressed his displeasure with waiting so long and with the presence of others in the car, the transaction began. Rice, however, explained he did not have drugs on his person at the time but that the drugs would be delivered once the money was paid.

Before the money exchange took place, Carlton Easter observed what he suspected was a surveillance by parole officers. Jamel Easter then drove to another location. At the new location, Carlton Easter handed the money to Rice. Rice, while counting the money, had asked Moore to hold some of the money he was counting because there were so many bills of low denominations. At that point in time, police officers attempted an arrest.

Jamel Easter drove the car away by driving over the sidewalk. Moore threw a gun up to the front seat and, eventually, Rice rolled out of the vehicle. At

---

[2] During that time Jamel Easter's girlfriend drove by the intended meeting place as if to check out the situation. Rice had met the girlfriend a day earlier when he sold a car to Jamel Easter or his girlfriend. (N.T. Vol. 2 at p. 90.)

some point the vehicle stopped with only one occupant in the car – Carlton Easter. Jamel Easter, Joseph Moore, and the unidentified occupant ran from the vehicle. Moore and Jamel Easter ran to a deserted house followed by officers.  As Jamel Easter neared the abandoned house, he went down to the ground, got up, and proceeded to the abandoned house.  The officers who were in visual contact followed and found in the exact location where Jamel Easter went down a bag containing crack cocaine weighing 83.7 grams, a digital scale, and a black .40 caliber Glock pistol.

At the abandoned car, officers found a bag on the floor in the behind the front seats which contained 4.7 grams of cocaine base and marijuana.  Carlton Easter and Jamel Easter each had small amounts of marijuana in their pockets.

Jamel Easter gave a statement to the police in which he admitted that he had arranged with the informant to purchase nine ounces of crack cocaine for $6,000.  In addition, he admitted that he drove to the location with the other individuals and had the 83.7 grams of crack cocaine and the scale on his person during the transaction.  He admitted that, as he drove away from the area, the black gun was thrown from the backseat area up towards him.  When he fled from the police, Jamel Easter admitted that he hid the gun, crack cocaine, and the scale near the abandoned house before entering it.

The negotiations for the crack cocaine were between Jamel Easter and Rice. When the vehicle with Jamel Easter, Carton Easter, Joseph Moore and another unidentified male arrived for the meeting with Rice, the informant entered the vehicle with all of them.  The conversation was held on the manner in which the drug transaction would be made.  Everyone in the vehicle knew what was happening. Carlton Easter handed the money for the transaction to Rice.  Carlton Easter was observing and was concerned about being observed by police or parole

officers. Moore accompanied Jamel and Carlton Easter and was, perhaps, the protection insurance. When the bust began, Moore threw the gun into the front seat. While the jury acquitted Moore of the charge of possession of a firearm, both Jamel Easter and Rice told the same facts about the tossing of the firearm from the back seat to the front seat. Regardless of whether Moore had a gun, he knew what was happening and fled the scene. The jury was convinced that Moore was involved in a conspiracy to conduct a drug transaction.

In this case Jamel Easter was the facilitator, Carlton Easter was the lookout and money man; and Joseph Moore was the protector. The goal and purpose was to successfully purchase cocaine base. The jury believed that, in its collective judgment, the Defendants were co-conspirators and the evidence supports that collective judgment.

### B. Possession with Intent to Distribute

The elements of this offense are (1) each defendant knowingly possessed or constructively possessed a controlled substance; (2) each defendant did so with the intent to distribute the controlled substance or aided and abetted the commission of the crime or were co-conspirators and the crime was reasonably foreseeable.

Jamel Easter was observed going to the ground while fleeing pursuing officers. In the exact spot where he went down, officers found 83.7 grams of crack cocaine, a digital scale, packing materials, and a gun. Jamel Easter admitted to possession of the cocaine.

The jury found Carlton Easter and Joseph Moore guilty of possession probably on the theory of constructive possession. In the car near the feet of Joseph Moore was a Nike bag which contained another bag in which was found crack cocaine and marijuana. All persons in that vehicle could have constructive

possession of the Nike bag and all were along to make a drug deal. Moore and Jamel Easter ran from the vehicle so they would not be found in possession of drugs. This flight by Moore and Jamel Easter was sufficient to prove their complicity in the conspiracy and their possession of the underlying cocaine that was recovered.

Jamel Easter, in his statement to Officer Cook, stated that prior to running from the car, he grabbed the gun and the bag that contained the scale and the crack (N.T. Vol. 3 at p. 338). The jury could have concluded these items were in view to Carlton Easter and that he had constructive possession of them.

### C.    Firearm Possession During and in Furtherance of a Drug Trafficking Crime

The elements of this offense are that (1) defendant committed a drug trafficking offense; (2) during and in relation to that crime the defendant knowingly possessed (carried) a firearm; and (3) defendant carried the firearm during and in relation to the drug trafficking.

In this case the jury found Jamel Easter guilty of this offense. The informant, Rice, testified to the negotiations with Jamel Easter to effect a drug transaction. The audio tapes confirmed the negotiations. The counting of the money in the car was in furtherance of the deal. There was testimony that a gun was tossed from the back seat to the front seat when the police attempted an arrest.

Police saw Jamel Easter running from the vehicle which contained drugs, go to the ground where police found drugs and the gun and, to put icing on the cake, Jamel Easter confessed that the drugs found there were his and that he took the gun and some drugs with him when he fled the car.

Jamel Easter also argued that there was no proof that the gun was an actual firearm. The court adopts the Government's response to this argument as set

forth in its response to these motions.  (*See* doc. 188 at pp. 15-16.)  Under the totality of the events above, the elements of the crime were met.

**V.**     **Conclusion**

This court is satisfied that the record supports the findings of the triers of facts of the guilt of the defendants beyond a reasonable doubt as reflected in the jury verdict form.  Since the basis for a new trial is a claim of insufficiency of the evidence, based on this court's recital of the evidence, there are no extraordinary circumstances that outweigh the evidence to justify the grant of a new trial.  An appropriate order will be issued.

                                                s/Sylvia H. Rambo
                                                United States District Judge

Dated:  March 5, 2009.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CASE NOS. 1:CR-07-153-01** |
| : | **1:CR-07-153-02** |
| : | **1:CR-07-153-03** |
| **v.** : | |
| : | |
| **CARLTON L. EASTER** : | |
| **JAMEL E. EASTER** : | |
| **JOSEPH JAMENE MOORE** : | |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1) The motions for judgment of acquittal and new trial filed by Carlton L. Easter, Jamel E. Easter and Joseph Jamene Moore are **DENIED**.

2) The finding of guilty on Count V as to Jamel Easter is dismissed.

3) Counsel for Joseph Jamene Moore shall file objections to the presentence report within fourteen days of the date of this order.

4) Sentencing proceedings will be scheduled by separate notice from the court.

s/Sylvia H. Rambo
United States District Judge

Dated: March 5, 2009.